UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:17-cr-00104-KJM-1 |
| Plaintiff, | ORDER |
| v. | |
| AHMAD NASSAR, | |
| Defendant. | |

Ahmad Nassar moves pro se for a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A), arguing his health conditions put him at greater risk of serious COVID-19 symptoms if he contracts the virus. As explained further in this order, that motion is denied without prejudice to renewal.

**I.   BACKGROUND**

Mr. Nassar was convicted of aggravated identity theft, unlawfully possessing more than fifteen "access devices" under 18 U.S.C. § 1029(a), and possessing a firearm despite a previous felony conviction for receipt of stolen property. *See* Plea Agreement at 1 & Ex. A, ECF No. 50. He is a recovering methamphetamine and stimulant user and committed his crimes because he wanted to see what he could do with a computer. *See* Stmt. of Reasons, ECF No. 72; *see also* Presentence Report at 5, 8, ECF No. 56. His fraud was elaborate and extensive. *See* Plea

1    Agreement Ex. A; Presentence Report at 5–8.  In all, he caused losses greater than half a million
2    dollars.  *See* Plea Agreement Ex. A at A-3.
3        At Mr. Nassar's sentencing hearing, the court recognized that although his offense had
4    been sophisticated and serious, substance use had contributed to his conduct, and he had remained
5    sober for a year on pretrial release at the time of his sentencing.  *See* Stmt. of Reasons, ECF No.
6    72.  The court also recognized Mr. Nassar's commitment to his family, including his wife and his
7    two very young children, and the trauma he experienced himself as a young child.  *See id.*  He
8    was sentenced to 48 months' incarceration, a downward variance from the advisory Guideline
9    range, followed by a 36-month term of supervised release, plus restitution of more than $140,000.
10   *See id.*; *see also* Judgment and Commitment, ECF No. 71.  Mr. Nassar is serving his sentence in
11   FCC Lompoc.  He has completed about half of his term of incarceration.  *See* Opp'n Ex. 1.
12       Mr. Nassar filed this pro se motion for compassionate release in late September.  ECF No.
13   73.  He claims to suffer from asthma, hypertension, diabetes and obesity, and he also claims to
14   have tested positive for tuberculosis.  *See id.* at 6.  He did not attach medical records to his
15   motion, however, and prison health records submitted with the government's opposition raise
16   more questions than they resolve.[1]  The records are inconclusive as to tuberculosis.  For example,
17   some parts of his records show negative tuberculosis test results, but others suggest a latent
18   infection, *see* Opp'n Ex. 2 at 38–39, 74, i.e., the presence of tuberculosis bacteria without
19   symptoms.[2]  The records also show Mr. Nassar has a body mass index below the "obese" level
20   associated with an increased risk of severe COVID-19 symptoms, and other reports in his health
21   records are inconsistent with his current claims of asthma, diabetes and hypertension.  *See id.* at 1,

---

[1] The court grants the request to file this exhibit under seal to protect Mr. Nassar's private medical information.  *See Chester v. King*, No. 16-01257, 2019 WL 5420213, at *2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

[2] *See* U.S. Centers for Disease Control, "Latent TB Infection and TB Disease" (Mar. 11, 2016), *available at* https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm, last visited Nov. 3, 2020.  The court takes judicial notice of this information.  *See, e.g.*, *Dubrin v. Cty. of San Bernardino*, No. 15-589, 2017 WL 8940181, at *21 n.14 (C.D. Cal. Sept. 7, 2017), *report and recommendation adopted*, 2017 WL 4339645 (C.D. Cal. Sept. 29, 2017).

38–39. Nor is Mr. Nassar within an age group known to be at greater risk of severe COVID-19 symptoms. *See* Opp'n Ex. 2 at 1. Finally, he has tested positive for COVID-19 in the past and does not claim to have suffered any serious complications. *See* Mot. at 35.

## II.   LEGAL STANDARD

A sentencing court has authority to modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce his term of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).

Many years ago, before the First Step Act and before defendants could move to reduce their sentences under § 3582, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582. *See* U.S.S.G. § 1B1.13. The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 16- 00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)). Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding, as this court has summarized in previous orders. *See, e.g.*, *United States v. Terraciano*, No. 17-00187, 2020 WL 5878284, at *2–3 (E.D. Cal. Oct. 2, 2020). This court has looked to the Sentencing Commission's policy statement as guidance in several previous orders and will do the same here. *See, e.g.*, *id.*; *United States v. Schweder*, No. 11-00449, 2020 WL 5257598, at *3–4 (E.D. Cal. Sept. 3, 2020).

## III.   DISCUSSION

The government does not dispute that Mr. Nassar has satisfied the exhaustion requirement of § 3582(c)(1). *See* Opp'n at 4. Nor does it dispute that he "suffers from certain health

1  conditions that may increase his risk" of severe COVID-19 symptoms.  *See id.* at 1; *but see id.* at

2  8 (claiming Mr. Nassar "has not been diagnosed" and is not "being treated for any health

3  condition recognized by the CDC to have an increased risk for severe illness from COVID-19").

4  The government's primary arguments against Mr. Nassar's motion are instead (1) he is not at an

5  elevated risk because he appears to have recovered from COVID-19 without serious

6  complications, (2) granting his motion would put his community at risk, and (3) the sentencing

7  factors of § 3553(a) do not support his motion.

8      District courts within the Ninth Circuit have recognized that asthma,[3] diabetes,[4]

9  hypertension,[5] latent tuberculosis[6] and obesity[7] increase the risk of serious COVID-19 symptoms

10 and complications.  This court and others within this Circuit have granted motions for

11 compassionate release to defendants who suffer from these conditions and are housed in facilities

12 within FCC Lompoc, citing significant COVID-19 outbreaks.  *See, e.g.*, *United States v.*

13 *Fernandez*, No. 16- 00115, 2020 WL 5909490, at *2 (E.D. Cal. Oct. 6, 2020).  And district

14 courts, including this court, have expressed skepticism of facially reassuring epidemiological

15 statistics from the Bureau of Prisons.  *See, e.g.*, *United States v. Pickard*, No. 11-00449, 2020 WL

16 4227510, at *3–4 (E.D. Cal. July 23, 2020).

---

[3] *See, e.g., United States v. Rodriguez*, ___ F. Supp. 3d ___, No. 17-4477, 2020 WL 4592833, at *1 (S.D. Cal. Aug. 5, 2020) (granting motion for compassionate release for petitioner suffering from asthma and obesity).

[4] *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979–80 (C.D. Cal. May 21, 2020) ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.").

[5] *See id.*; *see also United States v. Richardson*, No. 17-00048, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("Defendant's hypertension alone places him at significant risk of complications.").

[6] *See, e.g.*, *United States v. Galaz*, ___ F. Supp. 3d. ___, No. 15-02559, 2020 WL 4569125, at *5 (S.D. Cal. Aug. 7, 2020) ("District courts have recognized recent studies suggesting that latent tuberculosis, which can live in the body for years, can be activated by COVID-19, and have therefore released people with latent tuberculosis from prison.")

[7] *See, e.g.*, *Richardson*, 2020 WL 3402410, at *3 ("obesity alone" places defendant "at higher risk of COVID-19 complications").

1    The same approach is also true for defendants who have previously tested positive for
2    COVID-19; district courts have often preferred to "err on the side of caution to avoid potentially
3    lethal consequences," because "simply announcing that an inmate has 'recovered' does not mean
4    [the person] is completely safe from the virus." *United States v. Armstrong*, No. 18-5108, 2020
5    WL 4366015, at *3 (S.D. Cal. July 30, 2020) (internal quotations, citation omitted); *see also*
6    *United States v. Yellin*, No. 15- 3181, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020).  At
7    least one inmate has been hospitalized and died after supposedly recovering.  *See Armstrong*,
8    2020 WL 4366015 at *3.  Other courts have found, by contrast, in light of the scientific
9    uncertainty about COVID-19, that a defendant's previous infection cuts against a motion for
10   compassionate release.  *See, e.g., United States v. Molley*, No. 15-0254, 2020 WL 3498482, at *2
11   (W.D. Wash. June 29, 2020) (finding risk of reinfection "speculative"); *see also, e.g.*, *United*
12   *States v. Eddings*, No. 09-00074, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (declining to
13   grant motion for compassionate release because defendant had been infected for more than ten
14   days without complications).  This court is in the first group, electing to exercise caution, and
15   perceives no reason to depart from that decision now.  *See, e.g.*, *Fernandez*, 2020 WL 5909490 at
16   *4.

17       In this case, however, these standards do not lead the court in the direction of granting the
18   pending motion on the current record.  As summarized above, Mr. Nassar's medical records are
19   inconclusive at best.  It is unclear whether he has asthma, diabetes, hypertension, obesity, latent
20   tuberculosis or a body mass index above the level increasing the risk of severe COVID-19
21   complications.  It is unclear whether his health and incarceration at an FCC Lompoc facility
22   present extraordinary and compelling circumstances under § 3582.

23       Nor do the sentencing factors of § 3553(a) support Mr. Nassar's motion on this record.
24   Although his crime was nonviolent, it was serious and sophisticated and caused significant harm,
25   and he has served only about half of the below-Guidelines term of incarceration imposed by this
26   court.  These factors weigh against granting his motion.  *See, e.g.*, 18 U.S.C. § 3553(a) (requiring
27   sentencing court to consider, among other factors, "the nature and circumstances of the offense";
28   "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote

1  respect for the law, and to provide just punishment for the offense"; and for the sentence "to
2  afford adequate deterrence to criminal conduct"). This is not to say that other factors might
3  weigh heavily in his favor, with a more developed record. *See, e.g.*, *Terraciano*, 2020 WL
4  5878284, at *2–3, 5.

5  Finally, as the government points out, *see* Opp'n at 11, "danger may, at least in some
6  cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192
7  (9th Cir. 1992). Here, Mr. Nassar's crimes were at least partially a product of his drug use and
8  perhaps childhood trauma. *See* Stmt. of Reasons, ECF No. 72. Although his recovery and
9  sobriety to date are encouraging, his release plan lacks details showing how he will continue
10 making progress toward long-term sobriety and overcoming his past. *See* Mot. at 33. He states
11 only generically, for example, that he "fully intends to maintain his sobriety by participating in
12 counseling services to address past triggers" and by avoiding "negative influences." Reply at 6.
13 This summary leaves several questions unanswered. What type of counseling does Mr. Nassar
14 plan to attend, assuming his supervising probation officer approves, for example, and where?
15 What negative influences does he intend to avoid? How?

16 Other parts of Mr. Nassar's release plan, however, appear strong. He plans to live with
17 his wife and children, work at a family business, and continue the productive hobbies and habits
18 he has developed in the past few years. *See id.* While the court would ask the Probation Office to
19 assess the release plan if early release appears warranted, the concrete details Mr. Nassar provides
20 support his motion and show that if renewed with evidence supporting his health claims and
21 concrete plans for further recovery, relief could potentially be granted under § 3582.

22 **IV.   CONCLUSION**

23 The request to file under seal, *see* ECF No. 77, is granted.

24 The court DENIES the motion for compassionate release, ECF No. 73, without prejudice
25 to renewal with clarifying evidence of Mr. Nassar's medical condition, further evidence showing
26 his request is supported by the factors of § 3553(a), and further evidence supporting his argument

1   that granting his motion would not put himself or his community in danger.  Any renewal of
2   course must be consistent with Federal Rule of Civil Procedure 11.
3          IT IS SO ORDERED.
4   DATED:  November 3, 2020.

                                             _____
                                              CHIEF UNITED STATES DISTRICT JUDGE