UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:17-cr-00104-KJM-1 |
| Plaintiff, | ORDER |
| v. | |
| Ahmad Nassar, | |
| Defendant. | |

Defendant Ahmad Nassar renews his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The renewed motion was submitted without a hearing and is **granted**.

# I. BACKGROUND

The court described Mr. Nassar's offense, conviction, and sentence in its previous order. *See* Prev. Order at 1–3, ECF No. 79. To summarize, he is serving a below-Guidelines 48-month sentence of incarceration for a complex identity theft and fraud scheme that resulted in losses of more than half a million dollars. *See id.* This court also ordered him to pay restitution of more than $140,000. *See id.* at 2. He has completed about half of his 48-month term of incarceration. *See* Renewed Mot. at 14–15, ECF No. 81; Opp'n at 2, ECF No. 85. He moved for compassionate release last year, and the court denied the motion without prejudice to renewal. *See* Prev. Order at 6–7. He now renews his motion. *See generally* Renewed Mot.

/////

Mr. Nassar's medical records were inconclusive when the court last considered them. *See* Prev. Order at 2. He is now represented by counsel from the Federal Defender's Office and has submitted updated records in an attempt to clear up inconsistencies regarding his tuberculosis diagnosis, blood pressure and weight.[1] *See generally* Renewed Mot. Ex. A (under seal), ECF No. 89-1.

According to the updated records, a skin test for tuberculosis was administered in late 2019 and resulted in an induration (an area of firm swelling) of 12 mm. *See id.* Ex. A at 5; U.S. Ctrs. for Disease Control & Prevention, "Tuberculosis Skin Testing" (Nov. 2, 2020).[2] Another record from December 2020 shows that a skin test for tuberculosis yielded a similar result. *See* Renewed Mot. Ex. A at 1–3 (under seal). According to the CDC, an induration of 10 mm or more is considered a positive tuberculosis result for people with one or more additional risk factors, such as those who "live or work in high-risk congregate settings," including "correctional facilities." *See supra* "Tuberculosis Skin Testing." Mr. Nassar thus tested positive for the bacterium that causes tuberculosis in late 2019 and late 2020. According to his updated medical records, however, his most recent chest x-ray was negative for tuberculosis. *See* Renewed Mot. Ex. A at 5 (under seal). His infection is thus latent, i.e., the bacteria in his system are not currently causing tuberculosis symptoms. *See id.*; Prev. Order at 2 & n.2. He is being treated prophylactically. *See* Renewed Mot. Ex. A at 1–3 (under seal).

Mr. Nassar's updated medical records also confirm a few previously uncertain details about his height, weight, and blood pressure. His blood pressure indicated "[e]ssential (primary) hypertension" in December 2020, *id.* at 2, and he was prescribed medication, *see id.* at 1–3. His height and weight in early January also put him within the range classified as "obese"; even with his low range obesity classification, he is at higher risk of serious disease from COVID-19. *See id.* at 2; U.S. Ctrs. for Disease Control & Prevention, "People with Certain Medical Conditions"

---

[1] Mr. Nassar previously claimed to suffer from asthma and diabetes as well, but does not cite those conditions in his renewed motion. *See* Prev. Order at 2; Renewed Mot. at 4–11.

[2] At the time this order was issued, this information was available on the CDC's website at https://www.cdc.gov/tb/publications/factsheets/testing/skintesting.htm. The court takes judicial notice of this information. *See* Prev. Order at 2 n.2.

2

(updated Feb. 22, 2021).[3]  He argues these conditions prevent him from providing "'self-care within the environment of a correctional facility' to avoid contracting COVID-19 and suffering potentially life-threatening health complications."  *See* Renewed Mot. at 4–11 (quoting U.S.S.G. § 1B1.13 cmt. (1)(A)(ii)) (other citations and quotation marks omitted).

In addition to submitting updated medical records, Mr. Nassar has further developed his release plan with help from the Social Work Team in the Federal Defender's Office.  He proposes living with his wife and daughters in the family's home in Elk Grove if he is released.  *See* Renewed Mot. Ex. C at 1, ECF No. 81-2.  Drug use was one motivation for Mr. Nassar's crimes.  *See* Prev. Order at 2.  For that reason, he would also return to a recovery program at River City Recovery, where he received treatment while pending trial, if he were released.  *See id.*  *See* Renewed Mot. Ex. C at 1–2.  According to the release plan prepared for Mr. Nassar by the Federal Defender's Office, beds are available immediately for those who can pay out of pocket.  *See id.*  Mr. Nassar says he can make these payments.  *See id.*  Mr. Nassar also witnessed his mother's murder when he was still a young boy, and his crimes and drug use might have been at least partially the product of persistent trauma from that event.  *See* Prev. Order at 6; Stmt. of Reasons, ECF No. 72.  To address that trauma, he proposes to seek counseling from an agency that offers services at reduced costs to those in need.  *See* Renewed Mot. Ex. C at 1–2. Mr. Nassar will also seek healthcare through Covered California and a nonprofit organization designed to give primary healthcare to people from underserved populations with low incomes.  *See id.* at 2.  If he is released, he has a job waiting for him at his brother's cell phone business.  *See id.* at 3.  Mr. Nassar will also rely on financial and emotional support from his wife, who is a licensed vocational nurse, and from his large extended family.  *See id.* at 3–4.  He argues that with the benefit of this plan, taking into account his rehabilitation and clean prison record, an early release would create no danger for the community.  *See* Renewed Mot. at 13–14.

/////

---

[3] At the time this order was issued, this information was available on the CDC's website at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity.

3

1    The government opposes Mr. Nassar's renewed motion. *See generally* Opp'n, ECF
2    No. 85.  First, as noted in the court's previous order, the government points out that Mr. Nassar
3    appears to have been infected with and recovered from COVID-19 while in the care of the Bureau
4    of Prisons without suffering any severe symptoms; it argues the dangers of reinfection are small
5    and unknown.  *See* Prev. Order at 3; Opp'n at 9–10.  Second, the government emphasizes the
6    Bureau's efforts to contain the spread of COVID-19 within the USP Lompoc facility where Mr.
7    Nassar lives.  *See* Opp'n at 4–5.  It points out, for example, that Mr. Nassar has twice tested
8    negative for COVID-19 in the months since the court's previous order, *see* Opp'n Ex. 2 at 39–42
9    (under seal), ECF No. 91.  which might suggest the Bureau is now containing the spread of
10   COVID-19 at USP Lompoc.  The number of reported active cases is indeed small: one inmate and
11   three staff members at the most recent count.[4]  The Bureau also has plans to distribute vaccines to
12   several facilities, including those at Lompoc.  *See* Opp'n at 4 & n.1.  Third, the government
13   argues the sentencing factors in § 3553(a) do not weigh in favor of any reduction to Mr. Nassar's
14   below-Guideline 48-month sentence.  *See id.* at 13.  It collected statements from several of Mr.
15   Nassar's victims, who firmly oppose his request to reduce his sentence, with one exception.  *See*
16   *id.* at 2–4; *see also id.* Ex. 3, ECF No. 85-1.  Finally, the government argues that Mr. Nassar has
17   not met his burden to show his release would not put the community at risk.  *See* Opp'n at 12–13.

18   **II.   LEGAL STANDARD**

19   The court's previous order summarizes the legal standard for motions for compassionate
20   release under § 3582(c)(1)(A).  In short, defendants have the burden to show that they have
21   exhausted administrative remedies, that "extraordinary circumstances" support their motion, that
22   the requested reduction is supported by the relevant sentencing factors in § 3553(a), and that
23   release would not pose a danger to the community.  *See* Prev. Order at 3.

24   **III.  ANALYSIS**

25   Mr. Nassar has exhausted his administrative remedies.  Prev. Order at 3.  On this record,
26   the court also sees no reason to revisit its holdings in this and other comparable cases (1) that

---

[4] U.S. Bureau of Prisons, "COVID-19 Coronavirus," *available at* https://www.bop.gov/coronavirus/ (last visited Mar. 19, 2021).

4

latent tuberculosis, hypertension, and obesity increase the risk of serious COVID-19 symptoms and complications; (2) that motions for compassionate release may be granted when defendants suffer from these conditions and are housed in the Bureau's Lompoc facilities due to the risk of COVID-19 outbreaks; and (3) that facially reassuring epidemiological statistics might not accurately depict the danger of COVID-19 outbreaks, including at USP Lompoc. *See id.* at 4 & nn.5–7.

The government reiterates an argument it has raised in other oppositions to motions for compassionate release: that the Bureau is taking steps to reduce the spread of COVID-19 and that the number of infections is low. *See* Opp'n at 4–5. As this court and several others have found, including recently, the risk of infection and serious disease in the facility where Mr. Nassar is housed may create extraordinary and compelling reasons supporting a motion for release under § 3582 despite low numbers of reported active cases. *See, e.g.*, *United States v. Cortes*, 16-0014, 2021 WL 221786, at *1 (N.D. Cal. Jan. 21, 2021); *United States v. Schweder*, No. 11-00449, 2020 WL 5257598, at *4–6 (E.D. Cal. Sept. 3, 2020); *United States v. Pickard*, No. 11-00449, 2020 WL 4227510, at *3–4 (E.D. Cal. July 23, 2020); *United States v. Kamaka*, No. 18-00085, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020)); *but see, e.g.*, *United States v. Densmore*, 16-00295, 2021 WL 185498, at *2 (D. Idaho Jan. 19, 2021) ("While USP Lompoc has active COVID cases, this is not enough to constitute extraordinary and compelling reasons for release.").

This is not to say that conditions in USP Lompoc will always pose a risk of widespread coronavirus infections. Conditions in USP Lompoc may be changing for the better, as several courts have recently found. *See, e.g.*, *United States v. Stead*, 95-30098, 2021 WL 363843, at *2 (D.S.D. Feb. 3, 2021) (denying compassionate release because, among other reasons, despite "a high number of cases" at Lompoc in the past, "the current number of infections is . . . remarkably low"); *United States v. Lum*, 18-00073, 2021 WL 358373, at *4 (D. Haw. Feb. 2, 2021) (finding that low numbers of reported cases at USP Lompoc "provide strong evidence that the chance of [the defendant] contracting the virus at this time is hardly significant"). If a negative downtrend is holding, it appears that information is now available that the government could use to show that conditions have improved, that new measures are in place, and that the reported numbers of active

1  cases as the facilities in FCI and USP Lompoc are reliable, declining, and low.  But it has not
2  done so here.
3        The Bureau of Prisons' purported plan to vaccinate inmates and staff at its Lompoc
4  facilities also is no reason to reconsider the court's prior conclusions, at least not in this case.
5  Though laudable and encouraging, a plan to vaccinate in the future does not reduce the risk of
6  infection today.  COVID-19 is spreading widely in the county where USP Lompoc is located, and
7  prison staff and inmates have recently tested positive.  *See* Renewed Mot. at 2–3.  The
8  government's summary of its vaccination efforts also lacks detail.  For example, it does not
9  explain when vaccines might be administered to Mr. Nassar and to others who come into contact
10 with him.
11       The government also argues Mr. Nassar's risk of serious complications is low because his
12 motion cites the dangers of reinfection rather than a first-time infection.  *See* Opp'n at 9–11.  This
13 court has joined those that have elected to exercise caution in the face of uncertainty about the
14 dangers of reinfection.  *See* Prev. Order at 5.  It has not undertaken any different analysis for
15 those defendants who seek compassionate release on the basis of the risk of serious complications
16 from reinfection rather than initial infection, *see id.*, and declines to do so now on the current
17 record.  The parties have not cited any new, authoritative, reliable evidence to shed light on the
18 dangers of serious illness from reinfection.  They have instead relied on reports in the popular
19 press and decisions about other inmates with different health conditions living in different
20 facilities.  *See, e.g.*, Renewed Mot. at 12; Opp'n at 11.
21       The government argues relatedly that Mr. Nassar's previous infection and recovery show
22 the Bureau can treat him for COVID-19, and indeed has successfully treated him, despite his
23 latent tuberculosis, hypertension and obesity.  *See* Opp'n at 9–11.  The government cites several
24 decisions, including by other judges of this court, who have drawn that inference about other
25 inmates in the Bureau's Lompoc facilities.  *See United States v. Marquez*, No. 13-00431, 2021
26 WL 427287, at *1 (E.D. Cal. Feb. 8, 2021) (Shubb, J.) (finding Bureau's successful treatment of
27 defendant's previous coronavirus infection showed USP Lompoc was capable of treating him
28 despite his health conditions); *United States v. Connor*, No. 13-0165, 2020 WL 5702116, at *2

(E.D. Cal. Sept. 24, 2020) (Nunley, J.) ("Defendant has not shown he is unable to manage his health conditions and minimize his risks through self-care. To the contrary, it appears USP Lompoc was capable of adequately monitoring and caring for Defendant when he was previously diagnosed with COVID-19."); *United States v. Eddings*, No. 09-0074, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (Mendez, J.) ("[B]ased on the evidence currently before this Court, it appears FCI Lompoc is adequately monitoring and caring for Defendant."). The government's argument could be compelling but for one flaw: No evidence shows what the prison did to care for Mr. Nassar after he tested positive for COVID-19, if it did anything at all. *See* Opp'n at 11. If indeed the prison did nothing but test Mr. Nassar and send him on his way, then his successful recovery offers no reassurance of the prison's ability to care for him.

Mr. Nassar's health conditions and the risk of widespread COVID-19 outbreaks within USP Lompoc create compelling and extraordinary circumstances within the meaning of § 3582(c)(1)(A)(i). These health conditions and the risk of widespread infection substantially reduce his ability to "provide self-care within the environment of a correctional facility" for a "serious . . . medical condition" under the commentary to the relevant U.S. Sentencing Commission's Policy Statement. *See* U.S.S.G. § 1B1.13 cmt. (1)(A)(ii). The court must therefore consider whether his release would put the community in danger and whether the applicable sentencing factors support a reduction in his sentence.

Mr. Nassar's updated release plan addresses the court's concerns with his previous proposed plan, and it supports the conclusion he is unlikely to pose a danger to the community if he is released early, subject to strict conditions of supervised release. His disciplinary record in the prison is clean. He has completed an anger management program and also the Bureau of Prisons' residential drug treatment program, RDAP. *See* Renewed Mot. at 15 (citing Prev. Reply at 78, ECF No. 78). Building on this programming during his incarceration, he has concrete plans to continue treatment to avoid drug use, to participate in counseling, and to obtain medical insurance and employment. He has support both from his immediate family and from his large extended family. At the court's request, the Probation Office has also reviewed and approved of his release plan.

What remains, then, are the applicable sentencing factors of § 3553(a). The identity thefts and complex financial fraud Mr. Nassar perpetrated caused heartache, financial losses and intense stress to many innocent people. The statements of his victims are poignant evidence of that harm. Section 3553(a) requires that his sentence reflect "the nature and circumstances of the offense" and its seriousness, and his sentence must "promote respect for the law," "provide just punishment," and "afford adequate deterrence to criminal conduct." His sentence also already incorporates a significant reduction below the advisory Guideline range. *See* Prev. Order at 2. But the danger of a serious and perhaps deadly infection with COVID-19 weighs against his continued confinement. Custodial sentences are also harsher today than they were at the time Mr. Nassar was sentenced. As other district courts have recognized, the COVID-19 pandemic has led to stricter prison regulations, limited programming and recreation, and more frequent lock-downs, among other conditions. *See, e.g.*, *United States v. Frost*, No. 16-0582, 2021 WL 229665, at *9 (D. Md. Jan. 22, 2021); *United States v. Garcia*, ___ F. Supp. 3d ___, No. 11-0989, 2020 WL 7212962, at *3 (S.D.N.Y. Dec. 8, 2020). Sentences that were previously "sufficient but no greater than necessity" to comply with the needs expressed in 18 U.S.C. § 3553(a)(2) may today be greater than necessary to serve those needs. *United States v. Park*, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020). On balance, while it is a close call, the court finds the § 3553(a) factors weigh in favor of granting Mr. Nassar's motion.

**IV.   CONCLUSION**

The motion for compassionate release is **granted**.

The court modifies Mr. Nassar's sentence of incarceration of 48 months to time served. All previously-imposed conditions of supervised release remain in effect.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days for Mr. Nassar to make appropriate travel arrangements and for BOP to ensure his safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than seven days are needed to make appropriate

/////

1   travel arrangements and ensure the defendant's safe release, then the parties shall immediately
2   notify the court and show cause why the stay should be extended.
3       The court orders Mr. Nassar to self-isolate for fourteen days in his family's residence
4   upon arrival, as a means of protecting his health and that of the others residing in the home.  He
5   must also comply with all applicable public health orders.
6       This order resolves ECF No. 81.
7       IT IS SO ORDERED.
8   DATED:  March 22, 2021.

CHIEF UNITED STATES DISTRICT JUDGE